893 P.2d 468

**Donna KIEDROWSKI, Plaintiff–Appellant,**

v.

**CITIZENS BANK f/k/a First Interstate Bank of Farmington, Defendant–Appellee.**

**No. 15644.**

Court of Appeals of New Mexico.

Feb. 2, 1995.

Certiorari Denied March 14, 1995.

Steven T. LeCuyer, Mettler & LeCuyer, P.C., Shiprock, for plaintiff-appellant.

Joseph A. Palmer, Farmington, Kris J. Kostolansky, Rothgerber, Appel, Powers & Johnson, Denver, CO, for defendant-appellee.

## OPINION

BOSSON, Judge.

Plaintiff sued for a wrongful breach of an express or implied contract of employment with Defendant. The trial court granted summary judgment against Plaintiff on the ground that there were no genuine issues of material fact sufficient to create an express or implied contract. We disagree, and hold that genuine issues of material fact do exist as to some of the implied contract claims. Accordingly, we affirm in part, and reverse in part.

### FACTS

Plaintiff, Donna Kiedrowski, was a branch manager for Defendant Citizens Bank, formerly known as First Interstate Bank of Farmington (the Bank), from April 1986 to November 15, 1989. Plaintiff received an employee handbook which was the primary reference source for the Bank's written employment practices and policies. The Bank instructed its employees to act in accordance with these policies. Plaintiff was also instructed to apply the handbook to employees under her supervision, and she did so on various occasions. Page two of the handbook contained the following disclaimer:

> It should be clearly understood that the policies described herein are not to be construed, in any manner whatsoever, as establishing any contractual relationship between [the Bank] and any of its employees. Either the employee or the Bank may exercise the option to terminate the employment relationship at any time and for any reason.

Beginning in July 1989, the Bank supervisors met with Plaintiff on several occasions to discuss alleged problems in Plaintiff's work performance. These discussions were documented by memoranda. In October 1989, the Bank placed Plaintiff on a three-day suspension. Ultimately, the Bank terminated her on November 15, 1989.

Plaintiff sued for breach of contract. In her amended complaint she asserts four separate claims (Counts I–IV) based upon an implied contract. Counts I and II are founded upon the Bank's disciplinary and termination policies in the handbook; Counts III and IV refer to the Bank's actual practices in regard to discipline and termination. Plaintiff also asserts three separate claims based upon an alleged express contract (Counts V, VI, and VII) which arise from the Bank's memoranda to Plaintiff regarding the evaluation of her work. The Bank filed a motion to dismiss. The trial court heard argument and thereafter took the unusual step of entering findings of fact and conclusions of law.[1] The court then issued summary judgment in favor of Defendant on all Counts except Counts III and IV which were left to factual determination.

Thereafter, Plaintiff attempted to serve discovery requests regarding her two remaining claims. The Bank resisted discov-

---

1. Defendant filed a motion to dismiss pursuant to SCRA 1986, 1–012(B)(6) (Repl.1992), accompanied by an affidavit, and requested relief in the form of a summary judgment. The court was correct in treating this as a motion for summary judgment. SCRA 1–012(C). The trial court's entry of findings of fact and conclusions of law was unusual because the very premise for summary judgment is the lack of any genuine issue of material fact. Findings of fact are normally only made after a trial. SCRA 1986, 1–052; 1–056 (Repl.1992); *see also Shumate v. Hillis*, 80 N.M. 308, 454 P.2d 965 (1969).

ery and filed a motion for protective order which was eventually granted. The Bank moved for summary judgment on Counts III and IV. The trial court issued a second set of findings of fact and conclusions of law. This time the court found that even if the handbook did create an implied contract, the Bank nonetheless had good cause to terminate Plaintiff. Therefore, as a matter of law, the contract could not have been breached. Summary judgment issued on Counts III and IV as well.

*DISCUSSION*

■ Summary judgment is granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. SCRA 1986, 1–056(C) (Repl.1992). Once the Bank makes a prima facie case that it is entitled to summary judgment, the burden shifts to Plaintiff to show at least a reasonable doubt that a genuine issue of fact exists. *See Monett v. Dona Ana County Sheriff's Posse,* 114 N.M. 452, 456, 840 P.2d 599, 603 (Ct.App.1992). All inferences are construed in favor of Plaintiff, the party opposing summary judgment. *See Los Ranchitos v. Tierra Grande, Inc.,* 116 N.M. 222, 227, 861 P.2d 263, 268 (Ct.App. 1993).

1. *IMPLIED CONTRACT—COUNTS I, III, AND IV*

■ The Bank takes the position that Plaintiff was an "employee-at-will" and that she could be terminated at any time and for any reason. In the absence of an express or implied contract providing otherwise, an employee is presumed to be an employee-at-will. *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 730, 749 P.2d 1105, 1109, *cert. denied,* 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988). However, the presumption is rebuttable by "an implied contract term that restricts the employer's power to discharge." *Hartbarger v. Frank Paxton Co.,* 115 N.M. 665, 668, 857 P.2d 776, 779 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1068, 127 L.Ed.2d 387 (1994). For example, an employer's representations which give rise to a reasonable expectation that employees will be terminated only for good cause, may create an implied contract. If the rep-

resentations are "sufficiently explicit," a jury may find that a contract is implied in fact to "restrict" the absolute power of the employer to discharge at will. *Id.* at 672, 857 P.2d at 783.

■ The Bank first argues against an implied contract based on the disclaimer in its handbook with respect to "any contractual relationship," and that employees can be discharged "at any time and for any reason." New Mexico courts have upheld the validity of such disclaimers. *See Paca v. K–Mart Corp.,* 108 N.M. 479, 481, 775 P.2d 245, 247 (1989). However, an implied contract can still exist in spite of a disclaimer, where the employer's conduct reasonably leads employees to believe that they will not be terminated without just cause and a fair procedure. *See McGinnis v. Honeywell, Inc.,* 110 N.M. 1, 791 P.2d 452 (1990). In *McGinnis,* our Supreme Court stated: " '[a] contractual disclaimer does not automatically negate a document's contractual status and must be read by reference to the parties' "norms of conduct and expectations founded upon them." ' " *Id.* at 6, 791 P.2d at 457 (quoting *Zaccardi v. Zale Corp.,* 856 F.2d 1473, 1476–77 (10th Cir.1988) (quoting *Hillis v. Meister,* 82 N.M. 474, 477, 483 P.2d 1314, 1317 (Ct. App.1971))).

■ Ordinarily, what constitutes a party's "reasonable expectations" based upon "norms of conduct" and employer representations, is a question of fact for the jury, thereby defeating any resolution by summary judgment. *See Hartbarger,* 115 N.M. at 671–72 n. 5, 857 P.2d at 782–83 n. 5. Plaintiff asserts no less in arguing for reversal of the court below. However, before these expectations can be "reasonable," they must satisfy a certain threshold of objectivity. *See Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 23, 766 P.2d 280, 283 (1988), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989).

In *Kestenbaum,* 108 N.M. at 26, 766 P.2d at 286, our Supreme Court held that the totality of the circumstances surrounding an employee's dismissal must be examined by the jury to determine whether an employee has overcome the presumption of termination

at will. In *Kestenbaum*, the employer made oral representations that its employees were long term and permanent, and that employees would be terminated only for just cause. *Id.* at 22, 766 P.2d at 282. These representations, in conjunction with a company manual that did not clearly contradict them, constituted circumstances which, in the aggregate, were sufficient to overcome the presumption of termination at will, and sufficed to support a jury verdict for the employee. In contrast, our Supreme Court held in *Hartbarger* that a mere unspoken custom of the employer to retain employees indefinitely in the absence of just cause for termination, did not by itself, imply a contractual obligation to continue that practice. 115 N.M. at 672, 857 P.2d at 783. Nor was the employer obligated by vague and ambiguous references to long-term employment. *Id.* at 674, 857 P.2d at 785. Any employee expectations to that effect were not objectively "reasonable," entitling the employer to a judgment as a matter of law. *Id.* at 672, 857 P.2d at 783.

■ In our case, the Bank argues that its employee practices amount to no more than the same ambiguous and gratuitous custom permitted in *Hartbarger*. We disagree. The Bank's situation is quite different from *Hartbarger*, and more similar to *Kestenbaum*. The handbook contains detailed disciplinary procedures which Bank managers must follow when disciplining employees. Depending on the severity of an employee's performance problem, the handbook requires managers to respond with progressive discipline, in a gradually escalating fashion, first with an oral warning, then a written warning, written probation, suspension, and finally, termination. Plaintiff stated in her affidavit, based on her own management experience, that the Bank instructed their managers to follow the disciplinary procedures outlined in the handbook. Plaintiff herself, followed those same procedures when disciplining other employees, and the Bank applied those same procedures to Plaintiff in terms of a gradually escalating response to its alleged problems with her. Therefore, Plaintiff can reasonably maintain that she relied on more than just a custom or vague inferences of not terminating employees at will. The Bank's systematic application of its termination poli-

cies could reasonably create an expectation in Plaintiff that the same would be done in her case. There is at least a genuine issue of material fact, for resolution by the jury, as to whether the Bank's handbook, combined with the Bank's actual practices and representations, created an expectation of "an implied-in-fact contract term limiting the employer's right to terminate at will." *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783.

■ The Bank next argues that even if there is the factual possibility of an implied contract, the Bank *did* have cause to discharge Plaintiff, and therefore, there could be no breach of such an implied term. The Bank successfully argued to the trial court and now argues on appeal, that Plaintiff was terminated for her repeated failure to submit timely employee performance reviews. More specifically, the trial court's findings imply that she was terminated for an alleged failure to complete the performance review of one particular employee, Lynda Heaney.

Plaintiff adamantly denies the accuracy of this finding, and contends that whether she failed to complete Heaney's performance review in a timely fashion is an issue very much in dispute. We agree. Plaintiff's response to the Bank's motion for summary judgment was supported by an affidavit and extensive documentary material. Plaintiff asserts that when told of her termination for failing to complete the Heaney review, she emphasized to her supervisors that she had, in fact, submitted the Heaney review, and, that one of her supervisors, Cricket (Sisson) Long, had noted "Well Prepared" on the document. Despite this explanation, Long discharged Plaintiff, this time on the more general grounds of "lack of organization, variations in procedures, a lack of professionalism, and a lack of leadership/direction on the part of the branch manager."

The Bank now argues that in order to "complete" a performance review, Plaintiff also had to present the evaluation orally to the employee and return it to the Human Resources Department. Supposedly, Plaintiff failed to submit any evidence below of her compliance with these additional requirements. However, by affidavit, Plaintiff again

contests the Bank's version of the facts. She denies that these were actually requirements of a completed performance review. Plaintiff refers us to the deposition of supervisor Long, who used the word "completed" to refer to a review that is ready for submission to Human Resources, as opposed to actually submitted, one week before the employee's review date. This is exactly how Plaintiff performed the Heaney review. Plaintiff also suggests that the Bank was motivated by other, illegitimate and self-serving reasons for terminating her, which did not constitute just cause. She refers to the fact that she was the highest paid branch manager and suggests that the Bank was trying to reduce its cost of overhead by discharging her under the pretext of poor performance.

Plaintiff's version of events, supported to some degree by documentary evidence and affidavit, differs materially from the Bank's view and from the trial court's findings of fact. It is possible that the Bank may have had good cause to terminate Plaintiff and may well be able to persuade a jury to that effect. But that is a subject of considerable dispute, which is based upon a reasonable difference of opinion as to what happened and why. Therefore, we hold that the trial court erred in concluding that there was no genuine factual issue as to "cause," and we further hold that the issue of an implied-in-fact contract should have been submitted to the jury.

## 2. *IMPLIED CONTRACT—COUNT II*

■ Plaintiff alleges in Count II that, according to the handbook, only the Bank's cashier, Thomas James, could approve and sign her termination. James was on leave when Plaintiff was terminated, and therefore the Bank proceeded without his approval. Plaintiff claims a breach of implied contract based on this particular term in the handbook.

The trial court found that "[t]he personnel handbook requirement of approval of supervisory staff prior to termination was met by the [B]ank." An acting cashier was duly authorized to perform all cashier functions including the termination of employees. The acting cashier approved Plaintiff's termi-

nation. As a result, there are no factual issues for resolution, and the trial court's grant of summary judgment dismissing Count II was proper.

## 3. *EXPRESS CONTRACT—COUNTS V, VI, AND VII*

■ Plaintiff received written memoranda from the Bank on August 4, September 19, September 20, and October 18 memorializing specific performance problems discussed with Plaintiff. Plaintiff tries to create an issue of material fact as to whether these memoranda created an express agreement; i.e., that if she complied with the memoranda, her employment would continue. The trial court found that the memoranda "were disciplinary in intent and advisory in nature, and were not intended to create a new express contract between the parties." We agree.

The memoranda given to Plaintiff are clearly disciplinary in nature and not contractual; they outline complaints made against the Plaintiff, suggestions on how to improve her performance, future job expectations, and discipline instituted against Plaintiff. They warn Plaintiff to improve her work performance or face termination. There is no factual indication that the parties agreed to enter into a new or separate employment contract or that the Bank would refrain from terminating Plaintiff because of the memoranda. *Trujillo v. Glen Falls Ins. Co.*, 88 N.M. 279, 280, 540 P.2d 209, 210 (1975) (" 'When the minds of the parties have not met on any part or provision of a proposed contract, all of its portions are a nullity.' ") (quoting *Lamonica v. Bosenberg*, 73 N.M. 452, 455, 389 P.2d 216, 217 (1964)). Because there is no issue of fact as to the parties' intent, as evidenced by the memoranda, the trial court was correct in granting summary judgment on these counts of the complaint.

## 4. *PROTECTIVE ORDER*

The trial court entered a protective order precluding Plaintiff from conducting discovery into whether she was disciplined or terminated for cause. The trial court found that Plaintiff was actually terminated for cause, which is the very point Plaintiff was prevented from pursuing on discovery. Dis-

**578**

covery should have been permitted. *See Marchiondo v. Brown,* 98 N.M. 394, 397, 649 P.2d 462, 465 (1982) (recognizing presumption in favor of pretrial discovery to enable parties to obtain full knowledge of relevant facts). Accordingly, we reverse the grant of the protective order, and remand for appropriate discovery on this issue.

We also reject the Bank's argument that Plaintiff was dilatory in her discovery requests. Soon after the trial court ruled that issues of fact remained on Counts III and IV as to whether the Bank's conduct created an implied contract, Plaintiff submitted interrogatories and requests for production. The Bank's resistance and subsequent request for a protective order prevented Plaintiff from moving forward with discovery. At the very least, the Bank shares substantially in the resulting delay.

*CONCLUSION*

We affirm the trial court's grant of summary judgment dismissing Counts II, V, VI, and VII of Plaintiff's first amended complaint. We reverse summary judgment as to Counts I, III, and IV, and remand to the trial court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DONNELLY and FLORES, JJ., concur.