**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CLIFTON D. BAUCOM,

     Plaintiff - Appellant,

v.

AMTECH SYSTEMS
CORPORATION, a foreign
corporation,

     Defendant - Appellee.

No. 96-2130
(D.C. No. CIV-94-1454-LH)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **MCWILLIAMS** and **LUCERO**, Circuit Judges.

Appellant, Clifton Baucom, brought suit against his previous employer,

Amtech Systems Corporation ("Amtech"), alleging discrimination in violation of

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634,

and pendent state law claims of breach of contract, breach of the covenant of

good faith and fair dealing, promissory estoppel, and negligent misrepresentation.

The district court granted summary judgment in favor of Amtech as to all claims.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Baucom now appeals. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

We review the district court's ruling on Amtech's summary judgment motion de novo. Cone v. Longmont Hosp. Ass'n, 14 F.3d 526, 527-28 (10th Cir. 1994). We review the record in the light most favorable to Baucom, the party opposing summary judgment. Bolton v. Scrivner, Inc., 36 F.3d 939, 941 (10th Cir. 1994). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

**I**

In June 1988, Amtech hired Baucom as a manufacturing manager for its New Mexico manufacturing facility. (Appellant's App. at 198-202). Baucom's evaluations from 1989 to 1992 indicate that he consistently met or exceeded Amtech's performance expectations. (Id. at 378-94). On January 12, 1993, shortly after Amtech hired Lee Brezik as its new vice president of manufacturing, Brezik transferred Baucom to the position of manufacturing engineer manager. (Id. at 204).

After his transfer, Baucom received several unfavorable evaluations from Brezik over the course of a year. (Id. at 144, 147-49, 153-55, 205, 208-09.)

Brezik told Baucom that Baucom would be terminated if his performance did not improve. (Id. at 170.) According to Baucom, Brezik's judgments were unfair. Further, Baucom believes that Brezik sought to replace older employees with "younger less expensive employees." Appellant's Br. at 9. In September 1993, Baucom overheard Brezik say that Baucom was "getting old and set in his ways" and would not be around much longer. Appellant's App. at 132.

In mid-December 1993, Baucom attended a meeting to discuss a safety problem in the production area. During that meeting, he made comments to the safety manager that installing safety devices to prevent injuries would be a waste of time and money and that if an injury occurred, it would be the employee's own fault. (Id. at 189-93.) The safety manager sent Brezik a memo expressing concern over Baucom's attitude toward safety on the manufacturing floor. (Id. at 260-61.) In his deposition, Brezik testified that Baucom's response to the safety problem was the "last straw." Id. at 266. According to Brezik, as a result of Baucom's comments and his failure to perform his job properly, Brezik concluded that Baucom should be terminated. (Id. at 267). Amtech terminated Baucom in January 1994, at the age of 58.

## II

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). To prevail, an ADEA plaintiff must prove "that age was a 'determining factor' in the employer's challenged decision." Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996) (internal citations omitted). The plaintiff is not required to demonstrate that age discrimination was the sole reason for the employer's acts, but it must have "'made the difference' in the employer's decision." Id. (internal citations omitted).

An ADEA plaintiff may establish a prima facie case under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), by demonstrating that (1) he was within the protected class; (2) he was doing satisfactory work; (3) he was discharged in spite of the adequacy of his work; and (4) a younger person replaced him. See Greene, 98 F.3d at 558 (citations omitted).[1] Amtech asserts that Baucom is unable to establish elements (2) or (3) of the prima facie case because he was fired for substandard work performance. (Appellee's Br. at 14 n.1.) We disagree. Baucom produced a

---

[1] Alternatively, an ADEA plaintiff may carry his burden directly "by presenting direct or circumstantial evidence that age was a determining factor in his discharge." Greene, 98 F.3d at 557 (quoting Lucas v. Dover, 857 F.2d 1397, 1400 (10th Cir. 1988)). Although the appellant does not attempt to rely on this method of proof, we note that the appellant's evidence could be characterized as "direct or circumstantial evidence" of age discrimination. As discussed below, however, the manner in which the appellant's evidence is characterized in this case does not affect the analysis or the result.

series of evaluations which indicate Amtech was satisfied with his performance for a number of years prior to the incidents giving rise to this suit. (Appellant's Br. at 21; Appendix at 378-94.) Even when an employer claims to have discharged an employee for poor performance, "a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that . . . [he] had held [his] position for a significant period of time." MacDonald v. Eastern Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991) (citation omitted). We do not address the employer's stated reason for discharge at the prima facie stage. Id. at 119-21.

Plaintiff's establishment of a prima facie case gives rise to a presumption that Amtech unlawfully discriminated. See Greene, 98 F.3d at 558 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). The burden then shifts to Amtech to rebut the presumption of discrimination by "articulat[ing] a facially nondiscriminatory reason for the adverse employment decision." Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 327 (10th Cir. 1996) (citation omitted). Amtech contends Baucom was discharged because of his deficient work performance, which is a facially nondiscriminatory reason for severing the employment relationship.

Consequently, in order to avoid summary judgment, Baucom must "show that there is a genuine dispute of material fact as to whether the employer's

proffered reason for the challenged action is pretextual—i.e. unworthy of belief."

Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995), cert. denied, 116 S.

Ct. 2552 (1996). For summary judgment purposes, a plaintiff makes an adequate

showing of pretext by demonstrating "that a discriminatory reason more likely

motivated the employer or . . . that the employer's proffered explanation is

unworthy of credence." Marx, 76 F.3d at 327-28 (internal quotations omitted).

Baucom contends that Amtech's stated reason is pretextual for the

following three reasons: (1) Baucom allegedly overheard his supervisor, Lee

Brezik, "tell another employee that Baucom was too old and set in his ways and

that Baucom would not be around much longer," Appellant's Br. at 8; (2) Brezik

allegedly had a plan under which Baucom "and other employees who had built up

the company [would be] terminated . . . and replaced by younger less expensive

employees," id. at 9; and (3) Brezik's criticisms of his work were "baseless and

inaccurate" and his history of favorable evaluations shows satisfactory work

performance, id. at 9-10.

Regarding Baucom's first claim, we have previously stated that "[a]ge-

related comments referring directly to the worker may support an inference of age

discrimination." Cone, 14 F.3d at 531 (internal quotations omitted). Not all

remarks support an inference of discrimination, however. Certain comments may

be so isolated or ambiguous that they are "too abstract . . . to support a finding of

age discrimination." Id. (internal quotations omitted). Although the comment at issue here is troubling because it was allegedly made by Baucom's supervisor and referred directly to Baucom, see Tomsic v. State Farm Mut. Auto. Ins. Co., 85 F.3d 1472, 1479 (10th Cir. 1996), it was a single, isolated comment. Brezik allegedly made the comment three months prior to the decision to fire Baucom, and there is no evidence of any other age-related remarks.

Based on the isolated nature of the comment and its remote timing in relation to the adverse employment decision, we conclude that Brezik's statement was a "stray remark" from which we may not infer discriminatory animus because the plaintiff has not demonstrated a nexus between the alleged discriminatory comment and the adverse employment decision.[2] See Cone, 14 F.3d at 531; see also Waggoner v. City of Garland, 987 F.2d 1160, 1166 (5th Cir. 1993) (holding that supervisor's statements that plaintiff was an "old fart" and that a younger person could do the work better was insufficient to establish an age discrimination claim).

---

[2] As noted earlier, our analysis and result are unchanged whether the appellant's evidence is characterized as "direct or circumstantial evidence" of discrimination, or evidence of pretext under the McDonnell Douglas framework. See Smith v. Horner, 839 F.2d 1530, 1537 n.11 (11th Cir. 1988). For the same reasons that we reject the appellant's arguments that this comment supports a showing of pretext on the part of Amtech, we also find that the appellant has failed to present "sufficient evidence [of discrimination] . . . for a jury to return a verdict" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Baucom's second argument concerning pretext is that Brezik had a plan "to get rid of" all of the people who had helped build the company. Appellant's App. at 441-442. As the sole support of this theory, Baucom points to the firing of Scott Johannsen, another employee in his mid-fifties, in May 1993. (Appendix at 270, 442.) Although evidence of a pattern of age-related firings would be sufficient to defeat summary judgment, see Greene, 98 F.3d at 561, Baucom has not provided evidence of such a pattern.

In Greene, the plaintiffs survived summary judgment by demonstrating that eight older executives left the company "virtually en masse." Id. at 560. Here, there is evidence of one other discharge approximately seven months prior to the appellant's own. The only indication that these two dismissals are related is the appellant's bald assertion that Lee Brezik had a private agenda to eliminate the older employees. To survive summary judgment, however, a plaintiff must present more than conclusory allegations attacking the validity of the defendant's justification. See Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1417 (10th Cir. 1993). The appellant offers no other evidence that his termination was linked to Johannsen's and any extrapolation from Johannsen's termination would be pure speculation.

Finally, Baucom challenges the validity of his poor performance evaluations as evidence of pretext. Although the length of Baucom's tenure is

sufficient to establish a prima facie case, he does not necessarily avoid summary judgment by establishing his prolonged service for Amtech. See MacDonald, 941 F.2d at 1121. There is significant evidence that Baucom's job performance was problematic over the course of his final year. Six months prior to his termination, he was warned that he would be terminated if he did not "straighten things up." Appellant's App. at 170. There is evidence of continuing problems with the accuracy of reports coming out of Baucom's department. (Id. at 187.) He does not dispute that such problems existed; he merely states that Brezik exaggerated their significance. (Id.) The appellant also admits that he had missed required meetings. (Id. at 194-96; 461.) Finally, the event that precipitated his discharge occurred at a meeting concerning safety issues when the appellant made extraordinarily callous remarks reflecting a total disregard for the safety of other employees. Again, Baucom does not deny making such statements. Rather, he argues that he was being sarcastic, and that he made "some bad choices of words in some areas." Appellant's App. at 190.[3]

Given the evidence presented by Amtech in support of its articulated reason of substandard performance, the appellant's argument that it was a pretext is not

---

[3] As one example, John Eberly, who was in charge of safety, reported in a memorandum to Lee Brezik that the appellant stated: "Putting in a reversal switch to prevent someone's hand or arm from being crushed is not worth $2,000." Appellant's App. at 261. Again, the appellant admits making the statement but suggests it was not serious because he had already planned to order the switches. (Id. at 191.)

compelling. First, the appellant claims that Brezik alone had targeted him for termination, (Id. at 143), but the record contains memoranda from two other employees complaining about the appellant's performance. (Id. at 260 (Memo from John Eberly to Lee Brezik concerning the statements the appellant made about the CATTS Safety Hazard); App. at 262 (Memo from Tom Bolson to the appellant complaining that no progress is being made on the acquisition of an inspection/work table)). Second, Baucom does not contest that there were problems with his performance, that such problems had been brought to his attention, that he had missed meetings, or that he made remarks demonstrating a lack of concern for safety issues. He merely reiterates that Brezik had a plan to get rid of older employees. That is not enough. See Martin, 3 F.3d at 1417. Moreover, Baucom's testimony that Brezik was unduly critical of his performance is not sufficient to show pretext. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1324 (10th Cir. 1997).

Even when viewed in a light most favorable to the appellant, see Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996), the evidence does not show a genuine issue of material fact regarding whether Amtech's proffered reasons for the challenged action were pretextual. On the contrary, the record leaves us with the firm impression that Baucom's termination resulted from quarrels over performance deficiencies rather than from ageist discrimination.

## III

Baucom argues that he had an implied employment contract with Amtech which entitled him to progressive discipline and dismissal only for cause. He bases this claim on Amtech's Employee Handbook and Amtech's Guide to Performance Planning and Reporting, as well as statements made to him by company employees.

## A

Under New Mexico law, in the absence of an express or implied contract providing otherwise, an employee is presumed to be "at-will." Hartbarger v. Frank Paxton Co., 857 P.2d 776, 779 (N.M. 1993). "An at-will employment relationship can be terminated by either party at any time for any reason or no reason, without liability." Id. An employee may rebut the presumption of at-will employment by demonstrating the existence of "an implied contract term that restricts the employer's power to discharge." See Kiedrowski v. Citizens Bank, 893 P.2d 468, 471 (N.M. Ct. App. 1995) (internal quotations omitted).

When he started working for Amtech, Baucom was given an employee handbook with a "progressive discipline" provision, stating that in most cases employee discipline would comply with the following successive steps: "1. Verbal warning; 2. Written warning; 3. Suspension without pay; 4. Termination." Appellant's App. at 241. The provision also states, however, that "any step can

-11-

be skipped depending on the case history and/or the seriousness of the deficiency or offense." Id. Further, "[i]n the case of . . . serious breaches, the Company may terminate employment immediately." Id. According to Baucom, Amtech's human resources representative, Carol Kessler, told him he could be fired only "for cause" at the time she gave him the employee handbook. (Id. at 122, 276.) He also claims that an Amtech executive, Gary Seawright, stated to Baucom that he would "like to see some key people . . . grow with the company." Id. at 123. Based on the progressive discipline policy and the comments by Seawright and Kessler, Baucom thought he could be terminated only for cause.

Amtech argues that regardless of any oral comments, the written handbook clearly explains that all employees are at-will employees, with no right to progressive discipline. Indeed, the handbook contains an "Employment At Will" provision, which provides:

> In the absence of a separate written contract, employment at Amtech
> . . . is considered "at will." This means the employee or the company
> can terminate employment at any time. . . . [T]he Company shall try
> to give employees advance notice of termination except for cases
> involving misconduct or gross negligence.

Appellant's App. at 221.

Although New Mexico courts have upheld the validity of such disclaimers, they have refused to do so "where the employer's conduct reasonably leads employees to believe that they will not be terminated without just cause and a fair

procedure." Kiedrowski, 893 P.2d at 471. The disclaimer "must be read by reference to the parties' norms of conduct and expectations founded upon them." Id. (internal quotations omitted). Significantly,

> what constitutes . . . "reasonable expectations" based upon "norms of conduct" and employer representations, is a question of fact for the jury, thereby defeating any resolution by summary judgment. . . . However, before these expectations can be "reasonable," they must satisfy a certain threshold of objectivity.

Id. (citations omitted). Oral representations made by an employer may be sufficient to overcome the presumption of termination "at-will." Kestenbaum v. Pennzoil Co., 766 P.2d 280, 284-85 (N.M. 1988). Although an employer is not "obligated by vague and ambiguous references to long-term employment," Kiedrowski, 893 P.2d at 472 (citing Hartbarger, 857 P.2d at 785), there is nothing vague or ambiguous about the alleged statement by Carol Kessler that the appellant could only be dismissed "for cause." Appellant's App. at 122. Viewing the evidence in the light most favorable to the appellant, we find that a genuine issue of material fact exists as to whether Kessler's statement gives rise to an implied contract term requiring Amtech to have cause for terminating its employment relationship with Baucom. Nevertheless, summary judgment is

appropriate because the record does not demonstrate a genuine issue of material fact concerning the existence of proper cause for the appellant's dismissal.[4]

As discussed above, the appellant concedes that there were ongoing disputes concerning the accuracy of his reports, that he had missed managerial meetings, and that he had made grossly inappropriate comments concerning safety on the manufacturing floor. Under New Mexico law, Amtech need only have had "reasonable grounds to believe that sufficient cause existed to justify [the appellant's] termination." Kestenbaum, 766 P.2d at 287 (citations omitted). The record in this case is replete with undisputed evidence of the appellant's deficient job performance. Accordingly, we find that summary judgment was appropriately granted because the appellant does not raise a genuine issue of material fact concerning the existence of cause for his termination.

**B**

Baucom also claims that Amtech breached its employment contract with him by failing to comply with the progressive discipline policy outlined in Amtech's employee handbook. (App. at 241.) Under New Mexico law, if an

---

[4] The appellant advances alternate grounds of promissory estoppel and negligent misrepresentation to establish that he could only be terminated for cause. Because we find that the appellant fails to raise a genuine issue of material fact concerning the existence of cause, we hold that summary judgment for Amtech was appropriate on those claims as well. Further, because we affirm summary judgment against the appellant on the ground of negligent misrepresentation, we decline to consider whether damages for emotional distress are available for that tort under New Mexico law.

employer "choose[s] to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it.  Having announced a policy, the employer may not treat it as illusory."  Newberry v. Allied Stores, Inc., 773 P.2d 1231, 1234 (N.M. 1989) (internal quotations omitted).  Assuming that Baucom had a contractual right to compliance with the progressive discipline policy, we nevertheless hold that summary judgment is appropriate.

Amtech's policy explicitly states that any step may be "skipped depending on the case history and/or the seriousness of the deficiency or offense." Appellant's App. at 241.  Although Baucom produces evidence that Amtech had always chosen to follow each step in the past, Amtech's mere unspoken custom of not skipping any step in the discipline policy is not enough, by itself, to impose a duty on Amtech to continue that practice.  Cf. Hartbarger, 857 P.2d at 785 (noting that evidence that employer normally fired employees only for cause does not in itself create "for cause" employment).  The appellant has produced no evidence indicating that the language of the progressive discipline provision is not controlling.  Here, the record chronicles the difficulties with Baucom's performance for a year prior to his termination.  There is evidence that Baucom had been warned verbally (App. at 205) and in writing (App. at 210-13), and that

-15-

Baucom's termination came on the heels of egregious statements concerning safety on the manufacturing floor.

On these facts, Amtech was not obligated under the policy to suspend Baucom before terminating the employment relationship. The district court properly granted summary judgment dismissing Baucom's breach of contract claim.

## C

Finally, Baucom argues that Amtech breached its implied duty of good faith and fair dealing by failing to comply with the progressive discipline policy and for terminating him without cause. Because we hold that the appellant has failed to raise a genuine issue of material fact with respect to the existence of cause or Amtech's compliance with its progressive discipline policy, we affirm the district court's summary judgment on this claim as well.

AFFIRMED.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

-16-