Terry D. GARRETT, Plaintiff,

v.

**LOWE'S HOME CENTERS,
INC., Defendant.**

No. CIV.A. 03–2293–CM.

United States District Court,
D. Kansas.

July 20, 2004.

Amy L. Coopman, Borel & Associates, Olathe, KS, for Plaintiff.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Terry D. Garrett filed suit claiming that defendant Lowe's Home Centers, Inc. of Olathe, Kansas, terminated his employment in violation of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 *et seq.* Pending before the court is Defendant's Motion for Summary Judgment (Doc. 28) and Plaintiff's Motion to Strike, or in the Alternative, Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 31).

## I.  Factual Background

### A.  Plaintiff's Termination for Use of Profanity

Plaintiff began his employment with defendant on June 23, 1999; plaintiff was 51 years old when he was hired. Defendant promoted plaintiff to the position of Assistant Store Manager ("ASM") at the age of 53. At some date after plaintiff took the title of ASM, defendant appointed Andy Schweizer to be Store Manager.

On May 20, 2002, plaintiff and ASM Robert Hernan encountered one another on defendant's premises and engaged in a short argument. Plaintiff admits he uttered an expletive at Hernan but asserts it was in response to Hernan's similar profanity. The verbal altercation appears to have arisen as a result of Hernan's arrival time at the store. Plaintiff began his shift at noon and awaited Hernan's appearance so that he could take a dinner break, alleging that Schweizer had informed plaintiff that Hernan would begin work between 6 and 7 p.m., but that Hernan did not arrive until between 8:30 and 9 p.m. Hernan testified that he did not feel that he arrived later than he was scheduled to begin his shift.

Following the incident, Schweizer asked Hernan what had happened and requested that Hernan prepare a written statement describing the argument. Hernan completed his statement the same evening. Schweizer also spoke with plaintiff, who admitted to using profanity, before sending plaintiff home.

On May 21, 2002, Schweizer investigated the incident further, including requesting plaintiff to prepare a written statement of the altercation with Hernan. Schweizer terminated plaintiff's employment on May 21, 2002. Schweizer asserts that he decided to discharge plaintiff because of his use of profanity during plaintiff's argument with Hernan. Defendant asserts that District Manager Terry Burleson and Area Human Resources Manager Rodney Lee approved Schweizer's decision.

Stephanie Adams, a loss prevention specialist for defendant, asserts that Schweizer referred to plaintiff as the "old man" or "old guy" on several occasions in front of her. According to Adams, Schweizer openly questioned plaintiff's ability to do his job as well as younger ASMs, and that when Schweizer discharged plaintiff he said he had "finally gotten rid of the old guy." (Adams Dep. at 43.). Schweizer denies making any statements relating to plaintiff's age or treating plaintiff differently because of his age.

Adams also states that she informed the Regional Loss Prevention Director, Vince Briguglio, that she felt Schweizer discharged plaintiff because of plaintiff's age. Defendant challenges the occurrence of this alleged event because defendant asserts that Briguglio left the position in March 2002, while Schweizer terminated plaintiff's employment in May 2002.

### B.  Other Employees' Use of Profanity

Defendant disciplined, but did not discharge, hourly employee Sheldon McAtee

after he used the same word of profanity in front of a customer. Schweizer asserts that he was never informed of the incident.

On another occasion, McAtee allegedly called female employee, Machelle Houghton, a profane and derogatory term and yelled at her. Houghton states that another employee immediately reported the incident to Kay Earnhart in the human resources department. Houghton further asserts that Earnhart called Schweizer and both of them spoke to her about the event, and Schweizer asked her to write a report of the altercation. On another occasion, McAtee allegedly threatened to physically harm Houghton. Houghton states that she went to Earnhart's office to report the threats, where Earnhart called Schweizer to report the incident. Houghton also states that she prepared a written statement about McAtee's threat. Schweizer states that Houghton did not specifically describe McAtee's conduct, and that she did not prepare written statements. Houghton eventually quit and wrote a resignation letter in which she stated that the reason for her decision was her feeling that defendant would not protect her from McAtee.

In 2001, employee Kevin Helms reported that employee Eric Richter cursed at him when Helms asked him for help. Schweizer investigated the incident, but Richter denied using profanity and was not discharged.

Plaintiff alleges that Helms threatened plaintiff with physical harm in the presence of Schweizer. Plaintiff prepared a written statement about the incident, but plaintiff alleges that Schweizer told him that Helms had been kidding and did not discipline Helms. Schweizer denies witnessing the incident or telling plaintiff that Helms was kidding.

Schweizer has discharged at least three other employees near the age of forty for verbal threats of harassment. Schweizer terminated H.B. Thrasher's employment after Thrasher told Department Manager Jerry Golden, "I'm going to kill you," Todd Monks for demeaning verbal comments and sexual harassment, and Kenneth Tajchman for inappropriate remarks and foul language that offended another employee.

## II. Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Motion to Strike

Plaintiff moves to strike defendant's motion for summary judgment on the grounds that defendant cited the wrong legal standards for establishing a prima facie case of employment discrimination.

The court will analyze defendant's motion for summary judgment under the correct law as set forth by this circuit, irrespective of the elements set forth by either party. If defendant has premised its motion on an incorrect standard, then its request for summary judgment will likely fail. However, the court will analyze defendant's arguments and factual proffers on their merits, rather than striking defendant's motion before examination. Plaintiff's motion on this ground is denied.

Plaintiff also moves to strike defendant's use of Robert Hernan's affidavit for failing to comply with 28 U.S.C. § 1746. Section 1746 governs the use of affidavits and requires that the affiant subscribe that his or her statements are true in "substantially the following form: ... (2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'"

■ Hernan signed and dated his affidavit, following the affidavit's last line, which states: "I declare under penalty of perjury that the foregoing facts are true and correct. Executed by:." The court finds that Hernan's affidavit substantially complies with the requirements of § 1746. Plaintiff's motion to strike is denied.

### IV. Motion for Summary Judgment

#### A. Direct Evidence of Discrimination

■ Plaintiff contends that defendant terminated his employment because of his age, not as a result of plaintiff's altercation with Hernan. Plaintiff may demonstrate defendant's discriminatory motive, and therefore defeat summary judgment, by presenting direct evidence of defendant's discriminatory intent. *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990). Direct evidence requires facts that, on their face, reveal a defendant's discriminatory motive, for example in the form of an oral or written statement in which defendant admits that the reason for its employment decision is due to a protected characteristic of plaintiff. *See id.*

Plaintiff contends that Schweizer's statement, "I finally got rid of the old guy," constitutes direct evidence of discrimination. The court disagrees. Such a state-

ment, if made, is derogatory and may reveal Schweizer's animus toward plaintiff, but it does not uncover Schweizer's motive for discharging plaintiff. That is, as defendant points out, Schweizer did not say that he "got rid of plaintiff *because* he was an old guy." The court concludes that plaintiff has not offered direct evidence of discrimination.

## B. Indirect Evidence of Discrimination

In the absence of direct evidence, plaintiff's claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). According to *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 802. If the plaintiff presents a prima facie case, then the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the employment action. *Id.* If the defendant meets its burden, then the plaintiff must demonstrate that an issue of material fact exists as to whether the defendant's proffered reason is merely pretextual. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). *See also McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998) ("In evaluating ADEA claims,

the Tenth Circuit uses the three-stage analysis outlined in *McDonnell Douglas.*").

### 1. Prima Facie Case of Discrimination

▮ To establish a prima facie case under the ADEA, the plaintiff must show that (1) he was within the protected age group; (2) he was doing satisfactory work; (3) he was subjected to an adverse employment action; and (4) his position was filled by a substantially younger person. *Rivera v. City and County of Denver,* 365 F.3d 912, 919 (10th Cir.2004) (quoting *McKnight,* 149 F.3d at 1128); *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312–13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

There appears to be considerable confusion between the parties about the required fourth factor of an ADEA prima facie case. Defendant cites *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1260 (10th Cir.1988), for the proposition that the last element requires the plaintiff to show that similarly situated, younger employees who violated the same rule were treated differently than plaintiff. Plaintiff argues that the Tenth Circuit, in *Kendrick v. Penske Transportation Services, Inc.,* 220 F.3d 1220, 1228 (10th Cir. 2000), clarified the elements of a prima facie case and only requires the plaintiff to demonstrate that his job was not eliminated after his discharge. However, the court believes that it has properly laid out the correct test for a prima facie case with respect to an ADEA claim, which requires the plaintiff to prove that his position was filled by a substantially younger person. In *O'Connor* the Supreme Court held that, in the ADEA context, a prima facie case requires evidence of the inference of discrimination by showing that plaintiff's job was filled by a substantially younger replacement. 517 U.S. at 312–13, 116 S.Ct. 1307. Moreover, in *Rivera* the Tenth Circuit indicated that plaintiff's chosen final

element applies to racial discrimination cases, citing *Kendrick*, 220 F.3d at 1229, while an ADEA case requires the plaintiff to establish that the position was filled by a younger person, citing *McKnight*, 149 F.3d at 1128. *See also Holopirek v. Kennedy and Coe, LLC*, 303 F.Supp.2d 1223, 1235 (D.Kan.2004) (citing *McKnight* to explain that, in the ADEA context, a plaintiff's final requirement to establish a prima facie case is to show she was replaced by a younger person). The court, therefore, applies the standard as set forth in *Rivera* and *O'Connor*.

■ Defendant discharged plaintiff on May 21, 2002, and defendant does not contest that plaintiff was older than forty, placing him in the protected age group. *See* 29 U.S.C. §§ 623(a)(1), 631(a). Defendant also has not argued that plaintiff was no longer qualified for his job. With respect to the final element of plaintiff's prima facie case, Schweizer, in his deposition, could not immediately recall the age of plaintiff's replacement but identified two individuals who were both in their early thirties. The court finds that the age discrepancy meets the definition of "significantly younger" and concludes that plaintiff has established his prima facie case.

### 2. Legitimate, Non–Discriminatory Explanation

■ Defendant asserts that it terminated plaintiff because of his verbal altercation with Hernan in which he used a curse word. The court finds that this explanation meets defendant's burden to provide a legitimate, non-discriminatory reason for terminating plaintiff's employment.

### 3. Pretext

■ Plaintiff asserts that defendant's proffered explanation is pretextual because

Adams testified that she heard Schweizer refer to plaintiff as the "old man" and the "old guy" and, after discharging plaintiff, announce that he "finally got rid of the old guy." Defendant contends that Adams is bitter toward defendant and Schweizer, and that her testimony is biased and lacks credibility because other witnesses have refuted her testimony. Issues of credibility, however, are for a jury's consideration; therefore, the court will not disregard Adams's testimony.

Defendant also argues that, even if Schweizer made age-related comments, Tenth Circuit case law supports summary judgment in this case. Defendant cites *EEOC v. Wiltel, Inc.*, 81 F.3d 1508 (10th Cir.1996), where the court reversed the district court's finding that plaintiff's job application was rejected due to her religion, despite the interviewer making negative comments about plaintiff's beliefs. However, in *Wiltel*, the court found that plaintiff was not qualified for the position, unlike plaintiff in this case, and that the interviewer recommended another evangelical Christian for the position, while here a much younger man replaced plaintiff. Defendant also cites *Wood v. City of Topeka*, 17 Fed. Appx. 765, 2001 WL 649219, Case No. 00–3060 (10th Cir. June 12, 2001), and *Baucom v. Amtech Systems Corp.*, 131 F.3d 151, 1997 WL 748668, Case No. 96–2130 (10th Cir. Dec. 3, 1997). But in *Wood*, the manager who allegedly made age-related comments did not have the authority to discharge the plaintiff, and his comments were characterized as joking banter, while in *Baucom* the supervisor made a single, isolated comment three months prior to terminating the plaintiff's employment.[1] In this case, Schweizer had

---

1. Even were *Wood* and *Baucom* not distinguishable, the court would not be obligated to follow their holdings as citation to these un-

published opinions is disfavored, and they do not represent binding precedents. *See* 10th Cir. R. 36.3.

the authority to terminate plaintiff; his alleged remarks cannot be interpreted as a joke; and, he allegedly made one of his comments immediately subsequent to discharging plaintiff.[2]

Moreover, plaintiff's use of a curse word does not appear to be unprecedented in the work environment. Plaintiff points to several incidents in which hourly employees cursed or, in one case, physically threatened another employee without being discharged. Defendant asserts that these employees were not "similarly situated" because plaintiff was an ASM and, therefore, they cannot be compared. According to the Tenth Circuit, "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1404 (10th Cir.1997). Defendant contends that the hourly employees were under the supervision of their respective ASMs, while Schweizer was responsible for disciplining plaintiff. However, in each of the incidents cited, Schweizer ultimately investigated the incidents and made the decision about whether to discipline the employees. According to the record before the court, Schweizer apparently was responsible for disciplining all employees.

Defendant also contends that it holds its management employees to a different standard of conduct than its hourly employees. In support of its assertion, defendant cites to its Human Resources Management Guide ("HRMG"). (Def. Ex. 20 to Ex. B.). Defendant, however, has not indicated where the HRMG enunciates this higher standard, and from the court's review, the HRMG's conduct code appears to apply equally to all of defendant's employees. Even assuming that defendant expects a different level of conduct from its managers, plaintiff alleges that Hernan initiated the profanity during their argument, which plaintiff reported to Schweizer, but Hernan was not terminated. Defendant denies that Hernan cursed, but the court cannot resolve the dispute because it creates an issue for a trier of fact to decide.

Given the evidence at issue in this case, the court finds that plaintiff has demonstrated that there exists genuine issues of material fact regarding defendant's proffered reason for ending plaintiff's employment. Given Schweizer's history of declining to terminate employees for a single instance of profanity, and Adams's testimony of Schweizer's age-related comments, the court concludes that a jury could decide that age was a determinative factor in defendant's decision to terminate plaintiff.

**V. Order**

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 28) is denied, and plaintiff's Motion to Strike, or in the Alternative, Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 31) is denied in part.

---

**2.** Defendant also cites *McKnight,* 149 F.3d at 1129, to support its position that summary judgment is appropriate. But similar to *Baucom,* the comments in *McKnight* were made by non-decision makers or considered "stray" because they were made at least a year before the plaintiff's discharge.