POND, APPELLANT, *v.* DEVON HOTELS, LTD. ET AL., APPELLEES.

(No. 88AP-62—Decided November 10, 1988.)

*Sheppard & Bale* and *Alan Wayne Sheppard,* for appellant.

*Vorys, Sater, Seymour & Pease, James E. Phillips* and *Michael Thomas,* for appellees.

WHITESIDE, P.J. Plaintiff-appellant, Bonnie K. Pond, appeals from a judgment of the Franklin County Court of Common Pleas and raises three assignments of error as follows:

"1. The trial court erred in granting the defendants' motion for summary judgment because genuine issues of material fact exist concerning whether the employment handbook provided by the appellee to the appellant:

"(A) constituted an employment contract;

"(B) entitled appellant to progressive discipline procedures and termination only for just cause; and

"(C) was ambiguous because of the disclaimers contained within it.

"2. The trial court erred in grant-

ing the defendant's motion for summary judgment because genuine issues of material fact exist concerning whether the appellee's oral representations:

"(A)  created an employment contract for a period of years;

"(B)  entitled the appellant to progressive discipline; and limited their right to discharge the appellant for just cause only.

"3.  The trial court erred in granting the defendant's motion for summary judgment because the defendant's oral representations and employment manual created an estoppel which bars the defendant from asserting the employment-at-will defense."

By her complaint filed in the trial court, plaintiff alleges that she was employed by defendant-appellee, Devon Hotels, Ltd., to serve as its director of sales and marketing at Devon's Sinclair Plaza Hotel with employment guaranteed through the completion of a three-phased development plan the hotel was undergoing. Four months later, without notice, warning, or stated cause, defendants discharged Pond.

Defendants filed a motion for summary judgment contending that the employment was terminable at will and, accordingly, no cause of action existed. Since issues are raised only with respect to defendant Devon Hotels, Ltd., further references to defendant are limited to it.

The first assignment of error relates to an employee handbook provided by defendant to plaintiff shortly after her employment. The handbook set forth certain procedures for discipline in a progressive manner, culminating in termination for just cause. Defendant points out, however, that the handbook itself states that it is not intended to create a contract of employment and that employment by defendant is for no specific time period.

We agree with defendant that, standing alone, the employee handbook does not create a contract of employment other than one at will.

However, the handbook does set forth a standard of conduct for employees and sets forth what is denominated as "a partial list of the conduct considered to be unacceptable and can be considered grounds for termination." The handbook also set forth a very detailed system of progressive discipline, starting with a verbal warning followed by a written warning and then by termination for a third violation within a twelve-month period. The handbook further states expressly that "[t]he company will retain the right of termination on the first violation of rules numbered:  * * *,"  following which eleven of the thirty-eight numbered rules are specified. The handbook (as revised effective July 1985) also indicates that the handbook "is not meant to be a contract of any kind." It further states, however, that "[t]his employee handbook is designed to assist you in understanding many of the personnel policies, practices and benefits in effect at the time of this printing."

Thus, from the language in the handbook, at this point, it could be construed as outlining the employment standards and employee rights subject, however, to modification at any time by amendment or discontinuation of the handbook by defendant. The handbook concluded, however, with a statement that "[t]his handbook is not intended to create, nor is it construed to constitute, a contract of employment between the company and any or all of its personnel."  In other words, although the handbook itself, standing alone, does not create an employment relationship other than one at will,

when it is coupled with other circumstances, a contract other than one at will may be created.

Three recent decisions of the Ohio Supreme Court are pertinent to employment contracts, namely, *Henkel* v. *Educational Research Council of America* (1976), 45 Ohio St. 2d 249, 74 O.O. 2d 415, 344 N.E. 2d 118; *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150; and *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114. The holding of *Henkel* as set forth in the syllabus is as follows:

"In the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at will by either party."

Thus, the syllabus of *Henkel* deals primarily with the question of whether an employment-at-will contract or one for a specific term is created merely because an employment contract provides for an annual rate of compensation. The *Henkel* court notes that, unless there are other facts and circumstances indicating an agreement for a specific term, the employment contract is terminable at will by either party despite the stating of an annual rate of compensation. The *Mers* ruling is set forth in paragraphs one, two and three of the syllabus as follows:

"Unless otherwise agreed, either party to an oral employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law.

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."

*Mers* deals with oral employment-at-will employment agreements. Such agreements may be terminated for any reason at any time by either party. However, *Mers* points out that facts and circumstances surrounding an oral employment-at-will agreement can so vary the contract, at least with respect to a specific employee, as to create limitations upon discharge. The factors to be considered include employment, custom, the course of dealings between the parties, and company policy. The *Mers* court also pointed out that, where the employer makes representations which it reasonably should have expected to be relied upon by its employee as a promise for continued employment, the doctrine of promissory estoppel may apply to an oral employment-at-will agreement.

*Phung, supra,* distinguished *Mers* in a situation where an employee was discharged for reporting to his employer that the employer was conducting its business in violation of law. The Supreme Court held that such a discharge did not constitute an exception to the employment-at-will doctrine. No issue was raised or determined in *Phung* as to what constitutes an employment-at-will contract, it being conceded or assumed both in *Phung* and in *Mers* that the basic employment contract was for employment at will.

In this case, on the other hand, the basic issue is whether the relationship between plaintiff and defendant was an employment-at-will agreement or at least whether there is a genuine issue of fact as to the nature of the agreement. Defendant contends, and the trial court found, that the contract was one for employment at will and nothing more. Although plaintiff's contentions are sometimes confusing, basically, she seems to be making two basic contentions: (1) that the contract was one for a term rather than one terminable at will; and (2) even if not a contract for a term, the contract was for indefinite employment terminable by defendant employer only for just cause.

The term-employment contention is predicated upon conversations and assurances plaintiff was given at the time of her employment. The indefinite contract terminable only for just cause is predicated upon surrounding circumstances, including the instructions that plaintiff was given with respect to her handling of her subordinate employees (whom she had authority to hire and fire), coupled with the handbook provisions.

Defendant contends that reliance upon the instructions given plaintiff for dealing with her subordinates and the handbook is misplaced, not only because of the handbook provisions referred to above, but also because of an additional page to the handbook by which an employee is asked to acknowledge receipt and understanding of the handbook, which states in part that:

"I further understand that the term of employment at this company is for no specific time period and is for such period as the company may deem my services to be satisfactory and desirable, and that no person other than the Chairman has authority to change this term of employment or enter into an expressed [sic] or implied agreement to the contrary.

"I also understand that I may terminate my employment at any time, with or without cause, and that the company may terminate me at any time, with or without cause * * *."

The next two sentences of this provision of the handbook, however, create additional confusion since they state:

"* * * I know my employment here does not constitute a contract of employment between myself and the company.

"Finally, I further understand that the terms and conditions of this handbook are subject to review and change at any time. * * *"

Defendant refers to several appellate court decisions. First, defendant attempts to distinguish *Helle* v. *Landmark, Inc.* (1984), 15 Ohio App. 3d 1, 15 OBR 22, 472 N.E. 2d 765, because the handbook in that case reserved only the right to change employment policies. As to the basic provisions of the handbook here involved, this is a difference without a substantial meaning. The disclaimers in the handbook with respect to creating a contract of employment are not directed at the provisions of the handbook itself but, rather, to the reservation of the right to modify the policies expressed in the handbook. The meaning of the disclaimer is primarily that the entire contract is not set forth in the handbook, but, instead, it sets forth certain terms and conditions of the employment relationship and is subject to modification at any time by the employer.

The introductory page of the handbook includes a "welcome" over the signature of the chairman and a statement that "[t]his handbook outlines many of the standards and benefits under which we will work together." The disclaimers were not unambiguous; for instance, the first one

under the heading, "please note," states prior to the disclaimer that "[t]his employee guide is designed to assist you in understanding the personnel policies, practices and benefits of your company at the time of this printing." Under the heading, "What You Can Expect From Us," there is included a provision that "[t]o achieve these goals, we will strive to: * * * 4. [p]rovide wages, benefits and working conditions equal to, or better than, the average of the community for comparable types of work."

In short, the handbook is not a paragon of clarity as to the duration of employment but is inconsistent within itself and does purport to set forth the current policies of defendant regarding employment. *Helle,* however, is distinguishable since that case dealt only with severance benefits, rather than the right to continued employment. It is pertinent, however, for its holding that employee handbooks can create contractual rights which the employer cannot refuse to honor without incurring liability, even though the handbook contains a disclaimer.

Defendant also relies upon *Cohen & Co.* v. *Messina* (1985), 24 Ohio App. 3d 22, 24 OBR 44, 492 N.E. 2d 867, and *South* v. *Toledo Edison Co.* (1986), 32 Ohio App. 3d 24, 513 N.E. 2d 800, in support of its contention that the employment handbook creates no contractual rights in this case.

Turning first to *Cohen & Co.,* we note that that case involved a trial, not summary judgment. Thus, the court of appeals was determining whether the facts and law supported the determination of the trial court, which was affirmed, rather than whether there is a genuine issue of fact to be determined as to whether the employee handbook created contractual rights. The *Cohen & Co.* court expressly stated at 24, 24 OBR at 46, 492 N.E. 2d at 870: "* * * The determination of contractual in-

tent involves questions of fact whose resolution has already been determined by the trial court." In this case, those questions of fact have not been determined. Rather, plaintiff, by this appeal, seeks an opportunity to have those issues of fact determined.

*South, supra,* was a summary judgment case and involved an employee handbook. However, the court found that the employment handbook, as well as verbal assurances of continued employment, were superseded by a collective bargaining agreement when the employee joined the bargaining unit. The court also held that acceptance of a promotion which took her out of the bargaining unit did not entitle her to return to the bargaining unit upon her discharge from the higher position. The court did note that disclaimers may defeat an appellant's claim that employment was anything more than terminable at will. We agree. However, there is no indication in *South* as to the actual language of the disclaimers or the provisions of the employee handbook, and most certainly there is no indication of ambiguity within the handbook itself.

The handbook must be read as a whole, not by isolated parts. Repeated assurances of continued employment unless discharged for just cause, coupled with an isolated disclaimer or reservation of termination at will, requires a factual determination as to the provisions that are understood and enforced, and an effort should be made to reconcile the provisions of the handbook. Here, although the ambiguity may not be quite so drastic, there most certainly is ambiguity. For instance, even in the acknowledgment provisions relied upon by defendant, the first paragraph states that the employment "is for such period as the company may deem my services to be satisfactory and desirable," and the second portion provides that "the com-

pany may terminate me at any time with or without cause." The former provision connotes cause for discharge, whereas, the latter provision states it is not required. This could be construed together as to ensure employment so long as services are "satisfactory and desirable," without requirement of a showing of misconduct on the part of the employee. Such is not the traditional employment-at-will doctrine.

Additionally, the paragraph indicates that the "Chairman has authority to change this term of employment." In her depositions, plaintiff repeatedly stated that it was her understanding that she could not be terminated unless it is for just and good cause, prior to the completion of the three phases, although no one actually used that language in explaining her employment. In her August 19; 1987 deposition, she states in part:

"* * * That means to me I have a position through those three phases because that is what they are hiring me for. That is my job they are giving me. And that I should not — of course, I would not. My understanding would be that that would mean I would have a position right through the Radisson, whether it be two days after Radisson or six weeks after Radisson, or two years after Radisson, but I was to get them through that stage."

With respect to the actual provision language relied upon by defendant that an employee may be discharged at any time with or without cause, plaintiff testified in her April 7, 1987 deposition as follows:

"Q. What did you conclude with respect to the language that is specifically inconsistent with the conclusion that there was and [sic] contract. That it simply was not applicable?

"A. I concluded that the president makes the decision.

"Q. Did you conclude that the president made a decision as to whether it was this contract?

"A. He told me there would be a three-phase position.

"Q. Do I understand then that your conclusion or assumption with respect to the three phases was that you were guaranteed employment through all three phases?

"A. Correct.

"Q. And that that then was an employment contract from the time that you were employed until the end of the third phase?

"A. Correct.

"Q. And that you could not be fired in that, what, two and a-half year period?

"A. I would not be fired. I was hired for the three phases.

"* * *

"Q. What did — by the way, you concluded that from what Mr. Rill said or from what the document said?

"A. Both. I didn't think it applied from what Mr. Rill had said."

She continued as follows:

"Q. And Mr. Rill, did he ever say to you you will not be fired until this thing is fully renovated?

"A. I don't believe that anyone says that to anyone when they are hiring them. They say you will be through this phase to this phase."

In other words, although plaintiff conceded she was not told she would not be terminated except for just cause, she contends that she was told that she was assured employment through the third phase. In other words, she contends her employment was for a term, rather than at will, from the conversations with Mr. Rill, who was the chairman alluded to in the portion of the handbook relied upon by defendant as having the authority to change the term of the employment relationship:

Defendant contends to the effect,

and the trial court apparently found, that, since there is no written contract of employment, necessarily, an oral contract must be terminable at will. This is not the law of Ohio. Whether an employment contract is one at will does not depend upon whether the contract is oral or written. Rather, it depends upon the terms of the contract as mutually agreed upon by the parties, but the mere stating of an annual salary does not create a contract for a term of one year. Plaintiff contends that the conversation she had with the officers of defendant Devon Hotels, including its chairman, were such as to lead her to believe that her employment was guaranteed through the three-phase changeover of the motel operation to a Radisson Motel.

We agree that her deposition testimony on cross-examination could be so construed and weighed as to justify a conclusion that the employment was not for a term but, instead, was terminable at will of either party. Nevertheless, upon summary judgment, the evidence must be construed most strongly in favor of the party against whom the motion is made, and only inferences favorable to that party may be drawn from the evidence, since whether or not to make an inference from evidence lies within the purview of the trier of the fact. When the evidence is so construed, it is possible to conclude that the employment contract was not employment at will but, instead, was guaranteed employment though the three-phase changeover subject to termination for just cause.

Likewise, when the evidence is construed most strongly in favor of plaintiff, reasonable minds could conclude that the employee manual, although not independently constituting a contract, sets forth some of the terms and conditions of the employment contract otherwise entered into between the parties. In other words,

an employee manual such as herein involved, when given to an employee with the type of instructions and explanations contained in the manual herein, is enforceable between the parties to the extent that they have agreed thereto. The matters set forth in the manual constitute some of the terms and conditions of the employment relationship, even though the manual is not a complete contract of employment and is not the employment agreement itself. Under such circumstances, the employee manual may be incorporated into and be a part of the employment contract whether written or oral. Thus, the manual is not a contract but does set forth terms and conditions of the employment relationship created separately by an employment agreement, whether oral or written.

We agree with defendant that the handbook does not constitute *the* employment agreement. However, it does constitute evidence of the terms and conditions of the employment relationship, together with other evidence of the surrounding circumstances, agreements and commitments pertaining to the employment relationship. Just as the handbook, standing alone, does not create the employment relationship or employment contract, determination of the nature of the employment relationship and contract cannot be determined without reference to the employee handbook under the circumstances of this case.

Turning again more specifically to the assignments of error, the first assignment of error is not well-taken since it presupposes that the employment handbook itself constitutes a contract of employment, rather than merely evidence of the employment relationship between the parties. As to ambiguity, there is no issue of fact; as a matter of law, the disclaimers in the contract are ambiguous, necessitating factual determinations.

The second assignment of error, however, is well-taken. Construed most strongly in favor of plaintiff, the evidence is such as to raise a material issue of fact concerning both the issue of whether the employment contract was for a period of years and whether plaintiff was entitled to continued employment unless discharged for just cause. In this connection, as noted above with respect to the first assignment of error, the employee handbook constitutes evidence against which the oral representation must be considered in order to determine either of the two issues raised by this assignment of error.

The third assignment of error likewise is well-taken since, even if it be determined that there was no meeting of the minds as to the existence of a contract for a term, or continued employment during good behavior, plaintiff's testimony on deposition gives rise to an issue as to whether there were representations made to her that would justify her believing that she was promised continued employment unless ·discharged for cause. Construed most strongly in favor of plaintiff, the evidence gives rise to genuine issues of fact as to whether there were oral representations, whether plaintiff had a right to and did rely upon such representations, and whether such reliance was to plaintiff's detriment.

In short, the issues are such in this case that it cannot be determined from the evidence presently before us, construed most strongly in favor of plaintiff, that plaintiff is not entitled to relief, although the weight of the evidence might well justify such a conclusion.

We note that the summary judgment was granted in favor of both defendant Devon Hotels and defendant James Ferega. No issue has been raised upon appeal with respect to the summary judgment granted in favor of defendant Ferega and, accordingly, the judgment as to him must be affirmed.

For the foregoing reasons, the first assignment of error is overruled, the second and third assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is affirmed with respect to the granting of summary judgment in favor of defendant James R. Ferega, but is reversed with respect to granting summary judgment in favor of defendant Devon Hotels, Ltd., and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

BOWMAN and BRYANT, JJ., concur.