2001-NMCA-089

33 P.3d 285

**Janie MEALAND, Plaintiff–Appellant,**

v.

**EASTERN NEW MEXICO MEDICAL CENTER, Defendant–Appellee.**

**No. 20,160.**

Court of Appeals of New Mexico.

Aug. 29, 2001.

Certiorari Denied, No. 27,145,
Oct. 18, 2001.

Chris Key, Albuquerque, NM, Keith Oas, Roswell, NM, for Appellant.

W.R. Logan, Lisa Entress Pullen, Civerolo, Gralow & Hill, P.A., Albuquerque, NM, for Appellee.

*OPINION*

ALARID, Judge.

{1} The opinion heretofore filed in this case is withdrawn and the following substituted therefor. The motion for rehearing (reconsideration) is denied.

{2} This case arises out of a hospital's discharge of a registered nurse. The principal issue presented by this appeal is whether an employee handbook promulgated by the hospital gave rise to a reasonable expectation that Plaintiff would be discharged only after being afforded a fair opportunity to respond to charges of misconduct. We conclude that the evidence before the trial court established a genuine issue of fact as to whether the Eastern New Mexico Medical Center (ENMMC) employee handbook supported a reasonable expectation that Plaintiff would be discharged only after being afforded a fair opportunity to respond to charges of misconduct, and accordingly we reverse the grant of summary judgment in favor of Defendant. We also address the issue of whether Plaintiff came forward with sufficient evidence to ward off summary judgment on her claim that Defendant deprived her of property and liberty without due process of law claim. We conclude that Plaintiff's evidence created a genuine issue of fact on this claim, and accordingly we reverse the grant of summary judgment on Plaintiff's civil rights. Lastly, we consider whether the trial court's dismissal of Plaintiff's civil rights claim should be affirmed because Plaintiff failed to allege that ENMMC acted under color of state law. We conclude that Plaintiff's civil rights claim was subject to dismissal. However, we conclude that such dismissal is without prejudice and that, on remand, Plaintiff should be afforded an opportunity to replead this count.

**Background**

{3} The following facts are not in dispute. Plaintiff was employed as a nurse by ENMMC beginning in March 1991. Plaintiff had no individual written contract with ENMMC. During Plaintiff's employment, ENMMC had promulgated an employee handbook that included the following provisions:

SCOPE AND APPLICATION OF THIS MANUAL

The employee handbook outlines policies applicable to all employees of the organization. Nothing in this handbook is meant to create an employment contract or to guarantee the employment or duration of employment of any individual with the Medical Center. Employees may be terminated or may terminate their employment with the Medical Center at any time,

subject only to applicable requirements of law. Any oral statements or promises to the contrary are not binding upon the Medical Center. This edition supersedes all previous editions.

POLICY LANGUAGE

Although statements in this handbook have been approved by the Chief Executive Officer as representing general Medical Center policy, they should not be considered absolute. Eastern New Mexico Medical Center reserves the right to modify these policies at any time to ensure ease of administration and consistent, nondiscriminatory application of policy.

DISTRIBUTION

This employee handbook is distributed to senior management, department managers, current employees and new employees at orientation.

EMPLOYEE REQUESTS FOR INFORMATION

The contents of this handbook are available for inspection by employees at any time during normal business hours. Managers and supervisors are responsible for the administration and adherence to the policies, practices and procedures presented in this guide, and for explaining them to employees in their areas.

. . . .

PROGRESSIVE DISCIPLINE

It is the policy of the Medical Center to use a system of progressive and/or positive discipline for all employees under the level of Department Head, except in cases requiring immediate dismissal of an employee. The vast majority of our employees never require any disciplinary action. However, if it does become necessary, the type of corrective action will be determined on an individual basis by the nature of the circumstances. The progressive discipline steps apply only to non-exempt employees.

Counseling occurs all the time. This is the normal method by which supervisors counsel employees on the normal work methods or appropriate behavior. When normal counseling fails to correct a problem, progressive discipline steps usually occur.

The purpose of these steps is to give employees a chance to correct their performance or behavior. The steps are: verbal warning, written warning, probation or suspension, and termination.

* Verbal Warning: Verbal warning is an oral discussion with an employee regarding the employee's behavior, performance or actions that are unacceptable and must be either improved or not repeated depending on the circumstances. Verbal warnings are documented on the progressive counseling form and placed in the employee's personnel file.

* Written Warning: A written warning is a follow-up to the verbal warning when the employee has not improved or corrected the problem. This written documentation identifies the employee's inappropriate behavior or performance and an outline of a plan for improvement that has been mapped out by the supervisor. This documentation is discussed privately between the employee and his/her supervisor, signed by both, and a copy given to the employee and one placed in his/her personnel file in Human Resources.

* Suspension/Probation: If a problem still has not been corrected and is of an incident nature (for instance, a punctuality problem where the employee keeps coming late to work) the next step would be a 3–day suspension without pay. If the problem was performance oriented, the next step would be probation.

Normal probation is 90 days, during which time the employee is provided every opportunity to comply with departmental expectations. Suspensions are without pay and employee benefits, vacation or sick leave will not accrue during the suspension.

In some extreme cases, such as gross insubordination, a supervisor may immediately suspend an employee and send that employee home regardless of shift. In these situations, the department director/manager will meet with Human

Resources on the next business day to determine the next disciplinary step.

* Termination: Termination is a last resort for those employees who refuse to improve their behavior or performance despite the supervisor's attempt to counsel and provide opportunities for satisfactory job performance. However, in some rare cases due to the severity of the situation, termination may occur with little or no previous counseling. No employee will be terminated without prior review from Human Resources.

The following examples may result in *disciplinary action* or *immediate discharge* depending upon the circumstances or severity, but are not considered to be all inclusive.

* Continual tardiness and/or absence from assigned work area
* Violation of established safety rules
* Use of obscene or profane language
* Continuing unsatisfactory work performance
* Smoking in unauthorized area
* Defacing hospital property
* Failure to report occupational injuries and/or diseases to proper supervisor
* Selling, solicitation or contributions
* Acceptance of gratuities by an individual
* Refusal, or repeated failure to follow supervisor's instructions
* Fighting or disorderly conduct
* Repeated clocking early, or out late, in excess of six minutes prior to and/or following scheduled or authorized work time
* Violation of any established rules, regulations and procedures, i.e. abuse of telephone use policy
* Abuse of sick leave
* Attempting to injure others
* Theft or attempted theft
* Improper treatment of patients
* Possession of weapons on hospital property
* Gambling on hospital property
* Reporting to work under the influence of drugs or alcohol
* Possession of alcohol or unauthorized narcotics or other drugs on hospital property
* Unauthorized disclosure or falsification of patient information or other hospital information of a confidential nature
* Intentionally clocking or signing another employee in or out of work, i.e. time cards, work sheets, etc., or falsification of time cards
* Leaving the Medical Center area or assigned work station without proper permission prior to completion of the designated work shift
* Insubordination, rudeness, or abrasive conduct toward supervisors, individual employees, patients, visitors, physicians or others
* Refusing a blood or urine test will constitute admission that the employee is impaired and will be grounds for termination
* Dishonesty, stealing or destroying Medical Center property

Note: As stated elsewhere in this handbook, the 90 day probationary period is a trial period. Progressive discipline steps may not occur during this period. This period is designed for training, learning or retraining in a close role with the supervisor. If identified problems are not immediately corrected, it may be determined that the employee is not suited to work at the Medical Center and separation could occur during the 90 day probationary period.

(Emphasis in original).

{4} ENMMC provided Plaintiff with a copy of the handbook and told her that its provisions would govern her employment with ENMMC. Plaintiff was discharged by ENMMC on March 12, 1997, allegedly for calling in prescriptions for medications without physician approval.

{5} In January 1998, Plaintiff filed the present lawsuit. In her first count, Plaintiff asserted a common-law wrongful termination claim. In her second count, Plaintiff asserted that ENMMC, as "a New Mexico entity,"

had deprived Plaintiff of liberty and property without due process of law.

{6} In October 1998, ENMMC filed a "Motion for Dismissal of Claims for Failure to State Claims upon Which Relief May Be Granted, and Alternatively, for Summary Judgment." After full briefing and oral argument, the trial court entered an order granting summary judgment in favor of ENMMC. The trial court ruled that "[P]laintiff's at will employment relationship with the Medical Center has not been modified by the Medical Center's Employee Handbook, oral representations, or the conduct of the parties."

## DISCUSSION

### Plaintiff's Contract Claim

{7} On appeal, Plaintiff asserts that ENMMC was mistaken in its understanding that she acted without physician authorization; that the employee handbook supported a reasonable expectation that prior to discharge, employees will be given a meaningful opportunity to respond to allegations of misconduct; and, that if ENMMC had provided her a meaningful opportunity to respond to the charges of misconduct as required by the handbook, she would have corrected the misunderstanding and her discharge would not have occurred. ENMMC argues that whether ENMMC afforded Plaintiff an opportunity to demonstrate her innocence is immaterial because Plaintiff was an at-will employee, who could be terminated for no reason at all.

{8} Employers and employees have considerable freedom to contractually define their relationship, including specifying the terms under which the employer-employee relationship can be terminated. *See* UJI 13–2302 NMRA 2001; 13–2303 NMRA 2001. Where the parties have not addressed the issue of termination, courts will supply a default term permitting either party to terminate the relationship at any time, for any reason, without liability. *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 730, 749 P.2d 1105, 1109 (1988); Alan Farnsworth, *Contracts* § 7.17 at 555–58 (2d ed.1990) (characterizing termination at will as example of "omitted case" in which court supplies term for parties).

{9} New Mexico adheres to the objective theory of contracts. *Pope v. The Gap, Inc.*, 1998–NMCA–103, ¶ 13, 125 N.M. 376, 961 P.2d 1283. Notwithstanding its subjective intentions, an employer may be bound by its words or conduct that support a reasonable expectation on the part of employees that they will be dismissed only in accordance with specified procedures or for specified reasons. *Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct.App. 1995). Whether an employer's words and conduct support a reasonable expectation on the part of employees that they will be dismissed only in accordance with specified procedures or for specified reasons generally is a question of fact for the jury. UJI 13–2302 and UJI 13–2303. In reviewing the grant of summary judgment in favor of ENMMC, we do not decide whether or not we ourselves believe that the employer's words and conduct gave rise to a reasonable expectation of fair treatment; rather, the question we must answer is whether, on the evidence before the court, a reasonable jury could find that ENMMC's words and conduct support an objectively reasonable expectation that its employees will be dismissed only in accordance with specified procedures and for specified reasons. *Kiedrowski*, 119 N.M. at 575, 893 P.2d at 471 (to defeat employer's prima facie case for summary judgment, employee must satisfy court that her expectations meet "a certain threshold of objectivity").

{10} Employers are not required to issue employee handbooks. *Lukoski v. Sandia Indian Mgmt. Co.*, 106 N.M. 664, 666, 748 P.2d 507, 509 (1988). There are a number of reasons that employers continue to issue handbooks, notwithstanding the risk that statements in the handbooks may give rise to enforceable rights in favor of employees. "Policy manuals provide a means by which an employer can create a clear set of expectations about a given subject; communicate those expectations broadly across an organization; and ensure that those standards are available for application well beyond the time they were created...." Ronald C. Glover, *Drafting the Personnel Handbook* § 11.3 (Mass. CLE 1997). Formal written policies are perceived to "pro-

mote fairness and consistency, guarding against the arbitrary, capricious, and incongruous treatment of similar cases.... [S]uch policies ... help the employer by enhancing worker morale, loyalty, and productivity, providing competitive advantage in the labor market, and minimizing employee litigation." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089, 1106–07 (2000).

> Systems of personnel rules serve the goals of increasing both order and employee commitment. Rules provide one method of standardizing employee production and punishing deviations from the standards without depending unduly on the idiosyncrasies of supervisors.... Rules also increase employee morale. By reducing the opportunity for arbitrary supervisory action, rules can enhance the perception of fairness. When coupled with supervisory training and procedures for appealing adverse supervisory actions, rules promote a perception that employees are treated with respect and concern.

Henry H. Perritt, Jr., *Employee Dismissal Law and Practice* § 10.4 at 378 (1998). Employees who perceive that they will be treated fairly by their employer may be less likely to unionize. Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers*, 13 Indus. Rel. L.J. 326, 338 (1991/1992) (hereafter Befort).

{11} ENMMC's handbook is an example of a give with one hand, take back with the other approach to employee handbook drafting. *Eldridge v. Evangelical Lutheran Good Samaritan Soc'y*, 417 N.W.2d 797, 801 (N.D. 1987) (Meschke, J., dissenting); *cf. Allstate Ins. Co. v. Stone*, 116 N.M. 464, 466, 863 P.2d 1085, 1087 (1993) ("Thus, the policy on one hand giveth, but on the other hand it taketh away."). A handbook utilizing this approach relies on disclaimers and/or qualifying words or phrases to neutralize affirmative representations describing procedural safeguards and substantive standards. The goal of this approach is "to obtain the benefits of a handbook policy, while avoiding liability that might otherwise arise from promissory language contained in the handbook." Befort,

*supra*, at 348. Reliance on disclaimers and qualifying words and phrases to negate expectations generated by other statements can be risky; courts have declined to give dispositive effect to disclaimers, reasoning that a combination of disclaimers and promissory statements on the same subject results in a question of fact for the jury. *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 791 P.2d 452 (1990) (declining to treat disclaimers as dispositive; upholding jury verdict in favor of employee); *Kiedrowski*, 119 N.M. at 575, 893 P.2d at 471 (holding that disclaimer did not necessarily override other employer representations giving rise to reasonable expectation of termination only for good cause; reversing grant of summary judgment in favor of employer); *accord Strass v. Kaiser Found. Health Plan of Mid–Atlantic*, 744 A.2d 1000, 1013 (D.C.Ct.App.2000) (characterizing statement in disclaimer that handbook is not contract as "rationally at odds with other language in the document"; reversing trial court's order setting aside jury verdict in favor of employee); *Trombley v. Southwestern Vt. Med. Ctr.*, 169 Vt. 386, 738 A.2d 103, 108 (1999) (noting that handbook provisions committing employer to progressive discipline system are sufficient to support jury finding that employer may terminate employee only for cause); *Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E.2d 589, 596 (1994) (observing that "[i]n most instances, summary judgment is inappropriate when the handbook contains both a disclaimer and promises"); *Swanson v. Liquid Air Corp.*, 118 Wash.2d 512, 826 P.2d 664, 674 (1992) (en banc) (rejecting premise that disclaimer "can, as a matter of law, effectively serve as an eternal escape hatch for an employer who may then make whatever unenforceable promises of working conditions it is to its benefit to make"); *see also* Maureen E. McClain, *Employee Handbooks/Personnel Manuals*, 625 PLI/Lit. 163, 177 (2000) (prudent approach is to avoid detailed references in employee handbook to disciplinary procedures, rather than attempting "neutralization" by disclaimer).

■ {12} In the present case, a number of features in ENMMC's handbook could be understood by a jury as supporting a reasonable expectation that ENMMC had commit-

ted itself to discipline employees only in accordance with specified procedures and for a reason related to legitimate business needs. The handbook sets out, with considerable detail, a multi-stage system of progressive discipline. An employee might reasonably believe that ENMMC would not have described the progressive discipline system in such detail, nor would it have disseminated the policy to employees, if the progressive discipline policy was simply a non-binding set of guidelines to be used in management's complete discretion. The handbook prefaces the progressive discipline procedures with statements that "[m]anagers and supervisors *are responsible for* the administration and *adherence to* the policies, practices and procedures presented in this guide . . ." and "[i]t is *the policy* of the Medical Center to use a system of progressive and/or positive discipline for all employees under the level of Department Head. . . ." (Emphasis added). Terms such as "are responsible for," "adherence to" and "policy" have formal connotations suggesting that the progressive discipline policy is more than a set of non-binding guidelines.

{13} Furthermore, in addition to describing various procedures, the progressive discipline policy provides an extensive list of examples of conduct that may result in disciplinary action or discharge. Each of these examples is arguably related to a legitimate business interest of ENMMC. While the handbook states that the examples of sanctionable conduct are "not considered to be all inclusive," an employee could infer from the fact that the examples all relate to legitimate business needs that ENMMC would not discipline or discharge an employee for a reason unrelated to a legitimate business need.

{14} This brings us to what we view as the pivotal provision of the handbook: "[n]o employee will be terminated without prior review from Human Resources." This promissory statement is "sufficiently explicit" to support a jury finding that this statement established a "norm[ ] of conduct." *Kiedrowski,* 119 N.M. at 575, 893 P.2d at 471.

{15} We recognize that the provisions of the handbook favorable to Plaintiff's position

must be considered in the context of the entire handbook. The handbook includes the following disclaimer:

> Nothing in this handbook is meant to create an employment contract or to guarantee the employment or duration of employment of any individual with the Medical Center. Employees may be terminated or may terminate their employment with the Medical Center at any time, subject only to applicable requirements of law.

In addition to the above disclaimer, ENMMC employed precatory verbs such as "may" in several places and inserted various qualifying words and phrases such as "should not be considered absolute,"and "usually occur."

{16} ENMMC emphasizes the statement that "[n]othing in this handbook is meant to create an employment contract." The flaw in this type of disclaimer is that it misses the point that even an at-will employee hired pursuant to an oral agreement has a contract: "it is simply one that may be ended at any time for any reason." *Swanson,* 826 P.2d at 677. An employee relying on a handbook need not demonstrate that the handbook *created* the employer-employee relationship; it is enough that the handbook has *supplemented or modified* a pre-existing, consensual employer-employee relationship.

> [W]hen the evidence is construed most strongly in favor of plaintiff, reasonable minds could conclude that the employee manual, although not independently constituting a contract, sets forth some of the terms and conditions of the employment contract otherwise entered into between the parties. . . . The matters set forth in the manual constitute some of the terms and conditions of the employment relationship, even though the manual is not a complete contract of employment and is not the employment agreement itself. . . . Thus, the manual is not a contract but does set forth terms and conditions of the employment relationship created separately by an employment agreement, whether oral or written.

*Pond v. Devon Hotels, Ltd.,* 55 Ohio App.3d 268, 563 N.E.2d 738, 744 (1988). "Obviously, any employment is a contract. The issue is about the terms of that contract." *Eldridge,*

417 N.W.2d at 801 (Meschke, J., dissenting). Plaintiff's theory of her case is not necessarily inconsistent with the disclaimer, because her theory of the case does not require the jury to find that the handbook created her employer-employee relationship; Plaintiff can prevail if the handbook modifies or supplements a pre-existing oral employment agreement. *Garcia v. Middle Rio Grande Conservancy District*, 1996–NMSC–029 ¶¶ 9–10, 121 N.M. 728, 918 P.2d 7 (noting that employment contract may be shown by conduct amounting to offer of employment, acceptance, and consideration; recognizing principle that employee handbook may supply " 'implied contract term that restricts the employer's power to discharge' ") (quoting *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668–69, 857 P.2d 776, 779–80 (1993)).

{17} We likewise find no inconsistency between Plaintiff's position and the statement in ENMMC's handbook that "[n]othing in this handbook is meant to ... guarantee the employment or duration of employment of any individual." Plaintiff is not arguing that she was promised employment for a specific term or that she could not be terminated without progressive discipline if she in fact phoned in prescriptions without physician approval.

{18} The statement that "[e]mployees may be terminated ... at any time" is the closest the handbook comes to a direct reference to at-will employment. However, this statement is immediately qualified by the phrase "subject only to applicable requirements of law." Since "applicable requirements of law" includes the principle that an employee handbook may create legally-enforceable expectations modifying what would otherwise be an at-will employer-employee relationship, we do not read this particular disclaimer as necessarily inconsistent with Plaintiff's position that she could be removed from her position only in accordance with specified procedures and for a legitimate reason. *McGinnis*, 110 N.M. at 6, 791 P.2d at 457; *but see Garrity v. Overland Sheepskin Co. of Taos*, 1996–NMSC–032, ¶ 12, 121 N.M. 710, 917 P.2d 1382 (stating that employer's express reservation of right to terminate employees for any reason and without notice negated any reasonable expectation that employer had limited its common-law right to discharge employees at will).

{19} ENMMC refers us to the affidavit of Sam Pettit, ENMMC's Director of Personnel, which was included in the papers supporting ENMMC's motion for summary judgment. In his affidavit, Pettit states that ENMMC "did not intend to alter the at-will relationship between the hospital and [Plaintiff] by the language of the employee handbook," and that "[t]he discretion of the employees' supervisors and of the hospital's Director of Personnel controlled the material printed in the handbook on employee evaluations, discipline and termination." There is no indication in the record that Pettit's understanding was communicated to employees other than through the statements in the employee handbook. Accordingly, Pettit's individual understanding is irrelevant to the reasonableness of employee expectations created by the handbook: "what is operative is the objective manifestations of mutual assent by the parties, not their secret intentions." *Pope*, 1998–NMCA–103, ¶ 13, 125 N.M. 376, 961 P.2d 1283.

{20} To summarize, ENMMC promulgated an employee handbook containing detailed statements that could reasonably be understood as imposing substantive and procedural limitations on its common-law right to discharge employees at will. Although the handbook also contains qualifying language, the overall effect of the handbook is to create genuine issues of fact as to whether Plaintiff could be terminated only after meaningful prior review by ENMMC's human resources department and only if that review established reasonable grounds to believe that Plaintiff had engaged in the alleged misconduct.

*Plaintiff's Civil Rights Claim*

{21} In her second count, Plaintiff alleged that ENMMC denied Plaintiff of property and liberty without due process of law. Plaintiff's liberty interest claim was based on the theory that "[i]n terminating plaintiff in the manner in which it did, defendant implicated a liberty interest by failing to

provide plaintiff with a forum to clear her name from the unfounded allegations of defendant." Defendant moved for summary judgment on the liberty interest claim on the ground that Plaintiff could not establish a genuine issue of fact as to the element of public dissemination. *See, e.g., Casias v. City of Raton*, 738 F.2d 392, 396 (10th Cir. 1984) (noting absence of evidence of public dissemination of reasons for discharge of public employee; upholding directed verdict in favor of employer on employee's claim that manner of discharge deprived employee of liberty without due process of law). Plaintiff responded with an affidavit stating that ENMMC had reported her alleged misconduct to the Board of Nursing. Plaintiff's evidence that ENMMC reported the reasons for Plaintiff's discharge to the Board of Nursing was sufficient to create a genuine issue of fact as to dissemination. *Walker v. United States*, 744 F.2d 67, 69–70 (10th Cir. 1984) (noting evidence that government employer disclosed stigmatizing information to Oklahoma Employment Security Commission; reversing order dismissing liberty interest claim).

{22} ENMMC also moved for summary judgment on the entire civil rights count (both the property interest and liberty interest claims) on the ground that ENMMC did not act "under color of state law" in terminating Plaintiff's employment and in reporting her alleged misconduct to the Board of Nursing. *See generally Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 294, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (distinguishing between non-actionable private conduct and state action; noting relationship of conduct "under color of state law" to state action). ENMMC supported its motion for summary judgment with the affidavit of Ronald Shafer, Chief Executive Officer of ENMMC. In his affidavit, Shafer averred that none of ENMMC's employees are employees of Chaves County; that Chaves County does not control the personnel policies or employment decisions of ENMMC; that Chaves County does not receive any funds generated by ENMMC operations; and, that ENMMC does not receive funds from Chaves County. In response, Plaintiff attached photocopies of various documents,

including answers to complaints in which ENMMC had asserted the defense of the Tort Claims Act; a jury demand in which ENMMC requested a waiver of the jury fee on the ground that "Defendant is a State entity such that no jury fee is required by law;" an ENMMC policy statement promulgated by the ENMMC Board of Trustees acknowledging that ENMMC "is a not-for-profit, non-tax-supported County facility (political subdivision of the State of New Mexico)"; various minutes of the ENMMC Board of Trustees acknowledging the applicability of the Open Meetings Act [NMSA 1978, §§ 10–15–1 to –4 (1989, as amended through 1999) ]; and a memo from Shafer to "All Employees" advising them that ENMMC is owned by Chaves County. The copies of federal and state court pleadings submitted by Plaintiff were not certified. See Rule 11–902 NMRA 2001, for examples of self-authenticating documents. Plaintiff did not provide the trial court with an affidavit authenticating the documents attached to her response. *See, e.g.*, Rule 11–901(B)(1), (7), for methods of authenticating documents.

{23} In its reply, ENMMC argued that the documents submitted by Plaintiff were not properly authenticated, and therefore, did not satisfy the requirement of Rule 1–056(E) NMRA 2001, that evidence tendered in support of or in opposition to a motion for summary judgment "set forth facts as would be admissible in evidence." ENMMC requested that the trial court strike the documents. We agree with ENMMC that the trial court was required to disregard the documents submitted by Plaintiff. Where the opponent of evidence has raised a timely objection, the requirement that a party set forth facts as would be admissible in evidence is "mandatory in nature." *Chavez v. Ronquillo*, 94 N.M. 442, 445, 612 P.2d 234, 237 (Ct.App.1980). ENMMC interposed a timely objection and Plaintiff made no attempt to correct the deficiencies noted by ENMMC.

{24} Plaintiff's failure to follow Rule 1–056(E) is not fatal to her case that NMMC acted under color of law in firing her, however. ENMMC's counsel conceded during the

hearing on ENMMC's motion for summary judgment that Chaves County was involved in ENMMC's creation, which statement we understand as a reference to NMSA 1978, § 4–48B–5(A)–(E) (1947, as amended through 1981) (authorizing counties to "purchase, own, maintain and operate hospitals;" to "purchase the land necessary to construct hospitals;" to "construct county hospitals;" and to "issue general obligation bonds and revenue bonds ... for the construction, purchase, renovation, remodeling, equipping or re-equipping of a county hospital"). There is no dispute that Plaintiff was dismissed by the duly-constituted management of ENMMC. Our review of enabling legislation for the establishment of a county hospital satisfies us that ENMMC's management necessarily derived its authority to make personnel decisions through a delegation of authority by Chaves County. NMSA 1978, §§ 4–48B–5(C) (1982) (authorizing counties to control and regulate county hospitals) and 4–48B–10(A) (1982) (authorizing county commissioners to appoint hospital governing board to exercise county's powers). These circumstances are sufficient to raise genuine issues of material fact as to whether ENMMC is a public hospital and whether its management acted under color of state law in dismissing Plaintiff and by reporting her alleged misconduct to the Board of Nursing. *Milo v. Cushing Mun. Hosp.,* 861 F.2d 1194, 1196 (10th Cir.1988); *see also Lebron v. Nat'l R.R. Passenger Corp.,* 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (holding that Amtrak is agency or instrumentality of the United States for First Amendment purposes; emphasizing United States' control over appointment of members of board of directors).

{25} The "nexus" cases cited by ENMMC such as *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and *Loh–Seng Yo v. Cibola Gen. Hosp.,* 706 F.2d 306 (10th Cir.1983), are largely inapposite. These cases involve attempts to hold *private* actors liable for civil rights violations. Here, in contrast, we are concerned with the issue of whether officials of an arguably public hospital acted under color of law in discharging Plaintiff. *Faucher v. Rodziewicz,* 891 F.2d 864, 868–69 (11th Cir.1990) (holding that director and clinical director of public hospital acted under color of state law in terminating physician's staff privileges); *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 282 (7th Cir.1986) (distinguishing *Rendell–Baker;* holding that conduct of public hospital and its employees in terminating staff privileges of physician is "clearly state action"); *McVarish v. Mid–Neb. Cmty Mental Health Ctr.,* 696 F.2d 69, 71 (8th Cir.1982) (holding that members of governing board of public health facility were state actors for purposes of employee's claim that he was terminated without due process of law).

{26} ENMMC argued in the alternative that Count II should be dismissed pursuant to Rule 1–012(B)(6) NMRA 2001, due to Plaintiff's failure to allege that ENMMC acted under color of state law. In the trial court, Plaintiff's counsel conceded that Plaintiff had failed to allege facts demonstrating that ENMMC acted under color of state law. We agree with ENMMC that dismissal of Count II is appropriate in view of Plaintiff's admitted failure to allege the essential element of conduct under color of state law. *Guy v. Swift & Co.,* 612 F.2d 383, 385–86 (8th Cir.1980). However, we agree with Plaintiff that this dismissal should be *without* prejudice and that Plaintiff should be afforded an opportunity to correct this defect in her pleading of Count II. *Electro–Jet Tool & Mfg. Co. v. City of Albuquerque,* 114 N.M. 676, 685, 845 P.2d 770, 779 (1992).

## CONCLUSION

{27} The trial court's order granting summary judgment as to Plaintiff's contract and civil rights counts is reversed. The dismissal of Plaintiff's civil rights count is affirmed due to Plaintiff's failure to allege that ENMMC acted under color of state law. This dismissal is without prejudice. On remand, Plaintiff should be afforded the opportunity to replead this count.

{28} **IT IS SO ORDERED.**

RICHARD C. BOSSON, Chief Judge, concurs.

JONATHAN B. SUTIN, Judge (specially concurring).

SUTIN, Judge (specially concurring).

{29} New Mexico law is developed and it covers the issue of the propriety of summary judgment in this case. We do not need to invoke law review articles or pull in foreign law.

{30} Reversal because a genuine issue of material fact exists does not require us to venture beyond our existing law and discuss why employers "continue to issue handbooks," what "policy manuals provide," how "formal written policies are perceived," what goals "systems of personnel rules serve," whether "employees who perceive that they will be treated fairly ... may be less likely to unionize," how employers use disclaimers with discipline systems to create a give-but-take-back approach, and whether an at-will employment relationship is a contract. The majority states that "courts have declined to give dispositive effect to disclaimers," ignoring the fact that a disclaimer was given dispositive effect by our Supreme Court in *Garrity v. Overland Sheepskin Co. of Taos*, 1996–NMSC–032, ¶ 12, 121 N.M. 710, 917 P.2d 1382. *See also Paca v. K–Mart Corp.*, 108 N.M. 479, 481, 775 P.2d 245, 247 (1989).

{31} In New Mexico, an employee is presumed to be an at-will employee in the absence of an express or implied contract. *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 672, 857 P.2d 776, 783 (1993); *Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct.App.1995). The existence of an implied contract that restricts the unfettered discharge power rebuts the presumption. *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783; *Kiedrowski*, 119 N.M. at 575, 893 P.2d at 471. "An employer creates expectations by establishing policies or making promises. An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783. A written policy may not create any reasonable expectation giving rise to an implied contract when the policy contains an "express reservation of the right to terminate an employee for any reason." *Garrity*, 1996–NMSC–032, ¶ 12, 121 N.M. 710, 917 P.2d 1382.

{32} Circumstances that create an objectively reasonable expectation that employees will not be terminated except through a fair procedure can give rise to such an implied contract. *Kiedrowski*, 119 N.M. at 575, 893 P.2d at 471. In looking at the totality of circumstances surrounding a discharge, an employee handbook containing disciplinary or termination procedures may be considered when determining the question of objectively reasonable expectations. *Id.* at 575–76, 893 P.2d at 471–72. This is true although the handbook contains a termination-at-will type of disclaimer, "where the employer's conduct reasonably leads employees to believe that they will not be terminated without just cause and a fair procedure." *Id.* at 575, 893 P.2d at 471. What constitutes those objectively reasonable expectations is ordinarily a jury question. *Id.*

{33} In this case, the evidence to support an implied contract consists of provisions in the ENMMC employee handbook, and ENMMC's having provided Plaintiff with the employee handbook and telling her that the handbook would govern her employment. *See* Majority Opinion, ¶¶ 2–3. The question is simply whether a genuine issue of material fact exists as to whether these circumstances give rise to a reasonable expectation that ENMMC would conform to the fair hearing procedure before discharging Plaintiff. *Garrity*, 1996–NMSC–032, ¶ 12, 121 N.M. 710, 917 P.2d 1382; *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783; *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989).

{34} Our developed New Mexico precedent more than adequately puts employers on notice that when, as in this case, an employer creates an elaborate and detailed progressive discipline procedure and policy and disseminates it to employees in an employee handbook, but fails to state in an unambiguous, open, obvious, and explicit manner the difference between the at-will disclaimer and the progressive discipline policy and procedure, the issue of reasonable expectation is going to be a jury issue.

{35} ENMMC went to great length to detail in its employee handbook a discipline policy for management to follow. The handbook explicitly and unambiguously says that "no employee will be terminated without prior review from Human Resources." To permit an employee "every opportunity to comply with departmental expectations" is to give the employee a fair hearing on an issue of alleged employee misconduct. At the same time, ENMMC minimized its disclaimer, and has not distinguished the disclaimer from the discipline policy by explicitly giving employees reason to understand that they can be terminated for any reason at any time and for no particular work-related or business reason notwithstanding the existence of the employer's elaborate discipline policy. The disclaimer is, as well, ambiguous, in that it states that the handbook is applicable to all employees but does not create a contract or guarantee employment. It is ambiguous, too, when it states that employment termination is subject only to applicable requirements of law. Both the disclaimer and the discipline policy are contained in the employee handbook. Although seemingly inconsistent, both provisions might reasonably and objectively be construed by an employee as being applicable in tandem when considering the termination of an employee's employment.

{36} Because the result in this case is straightforward under existing New Mexico precedent, I fear the majority's apparent purpose may be to somehow question *Hartbarger* or *Garrity*, broaden *Kiedrowski*, or whittle away the at-will employment rule. Otherwise, there exists no need for elaboration. No expansion or clarification is required to decide this case. We should restate New Mexico adherence to the at-will rule and at the same time reiterate the *Hartbarger* admonition: "An employer does not have to issue a policy statement limiting its power to discharge, but if the employer chooses to do so and creates a reasonable expectation on the part of the employee, it is bound to fulfill that expectation." *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783. *See also Lukoski v. Sandia Indian Mgmt. Co.*, 106 N.M. 664, 666–67, 748 P.2d 507, 509–10 (1988) (quoting *Leikvold v. Valley View Cmty. Hosp.*, 141 Ariz. 544, 688 P.2d 170, 174 (1984)):

> Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason.... However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.

{37} For these reasons, I concur in the reversal of summary judgment dismissing the contract claim, but in the result only. I fully concur in the remainder of the opinion.